UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| FRANK EMIL AMODIO JR. and <br> ARYANA OLSON AMODIO, <br><br> Plaintiffs, <br><br> v. <br><br> OCWEN LOAN SERVICING, LLC, <br> WILSON & ASSOCIATES, PLLC, <br><br> Defendants. | Case No. 3:18-cv-00811 <br> Judge Aleta A. Trauger |

## MEMORANDUM & ORDER

Pending before the court is a Motion to Dismiss filed by one of the defendants, Wilson & Associates, PLLC ("Wilson"), to which the plaintiffs, Frank Emil Amodio Jr. and Aryana Olson Amodio, have filed a Response[1] (Docket No. 10). For the reasons discussed herein, Wilson's motion will be granted in part.

## FACTUAL BACKGROUND[2]

The Amodios are Tennessee residents. Wilson is an Arkansas entity that conducts foreclosure and debt collection activities in Tennessee. Wilson's co-defendant, Ocwen Loan Servicing, LLC ("OLS"), is a mortgage services company. In May 2005, Ayrana Amodio took out a second home mortgage and executed a deed of trust that was recorded in the Rutherford County, Tennessee Register's Office, with Wesley D. Turner named as trustee ("Deed of Trust"). (Docket No. 1-9.) OLS serviced the second mortgage. In July 2016, the Amodios applied for

---

[1] In support of its motion, Wilson also filed a memorandum of law (Docket No. 7), which contains one page of argument refuting the Amodios' three separate claims.
[2] The facts are taken in the light most favorable to the Amodios.

1

mortgage assistance via a loan modification on their first home mortgage, which was serviced by Select Portfolio Services ("SPS"). The following month, the Amodios fell behind on their first mortgage payments. In April 2017, SPS denied their loan modification and the Amodios immediately appealed that decision to SPS. In June 2017, SPS reversed its decision with regard to the Amodios' first mortgage and informed the Amodios that they would be eligible for a loan modification. On July 26, 2017, the Amodios sent SPS their first trial period payment.

The Amodios also fell behind on their second mortgage. On July 26, 2017, they received a letter from Wilson, stating that they were in default and that their loan was being accelerated, with a total debt of $15,395.26 now being due and owing. The Amodios disputed this debt to Wilson and contacted OLS, the mortgage servicer for their second mortgage, to determine the amount required for reinstatement. OLS advised Aryana Amodio to send payment via Western Union to OLS in the amount of $1,543.00. On July 31, 2017, the Amodios sent OLS $1,550.00 via Western Union. Aryana Amodio called OLS to confirm receipt of the reinstatement funds and was told that, while OLS did receive the funds, an additional $792.24 was due. Amodio immediately disputed the additional debt and requested an itemized breakdown. OLS did not advise Amodio that the funds provided were insufficient for reinstatement, nor that OLS was continuing with the foreclosure.

On August 4, 2017, a Substitution of Trustee document was recorded in the Rutherford County, Tennessee Register's Office. (Docket No. 1-4.) The Substitution of Trustee document stated that the Deed of Trust's beneficiary had requested that foreclosure proceedings be instituted. It further stated as follows:

> Whereas, the undersigned beneficiary does hereby desire and appoint Wilson and Associates, PLLC, of Rutherford County, TN, who may act in the place and stead of Wesley D. Turner, and

> Whereas, in the event this Substitution of Trustee has not been recorded prior to the first date of publication as required by T.C.A. 35-5-101 et seq., then the undersigned owner does hereby declare that it did appoint the Substitute Trustee prior to the first notice of publication and does hereby ratify and confirm all actions taken by the Substitute Trustee subsequent to said date of substitution but prior to the recording of this subsection,

(*Id*. at 1.) The box at the top of the document labeled "WHEN RECORDED RETURN TO:" is filled in as follows:

> This Instrument Prepared by:
> *WILSON & ASSOCIATES, P.L.L.C.*
> 400 West Capitol Avenue
> Suite 1400
> Little Rock, AR 72201
> (501)-219-9388

(*Id*.) On September 1, 2017 and October 1, 2017, the Amodios paid the remaining two trial period payments on their first mortgage to SPS and were advised by SPS that their loan modification for their first mortgage was on track. On August 30, 2017, individuals identified as Scott Young and Frank Russell purchased the property at a foreclosure sale, conducted on default of the Amodios' second mortgage, for the purchase price of $58,000.00. (Docket No. 1-5.)

The Amodios attempted a Chapter 13 bankruptcy in an effort to reverse the foreclosure and keep their property, but the petition was dismissed because the Amodios could not overcome the purchaser's objection. Once the underlying bankruptcy case was dismissed, a pending adversary proceeding against OLS was also dismissed. In purchasing the Amodios' house at the forceclosure sale, Young paid substantially more than the outstanding debt. When the Amodios filed their bankruptcy adversary proceeding, they were under the impression that the surplus proceeds somehow were used to assist Young in paying off the first mortgage. They subsequently learned that Wilson has possessed the excess proceeds since the foreclosure. Wilson has refused to return those proceeds to the Amodios or provide an accurate accounting of the disposition of them.

On August 28, 2018, the Amodios filed suit against OLS and Wilson. They bring the following claims against Wilson: wrongful foreclosure, violations of the Fair Debt Collection Practices Act, 15 U.S.C. 1692 *et seq.* ("FDCPA"), and abuse of process. On October 8, 2018, Wilson moved to dismiss the claims against it.

## **LEGAL STANDARD**

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). The Federal Rules of Civil Procedure require only that a plaintiff provide "a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). The court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

The complaint's allegations, however, "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action," but, instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679; *Twombly*, 550 U.S. at 556. According to the Supreme Court, "plausibility" occupies that

wide space between "possibility" and "probability." *Iqbal*, 556 U.S. at 678. If a reasonable court can draw the necessary inference from the factual material stated in the complaint, the plausibility standard has been satisfied.

## **ANALYSIS**

The court will address each of the claims against Wilson in turn.

### I. **Wrongful foreclosure**

The Amodios contend that Wilson is liable for wrongful foreclosure because the Substitution of Trustee document appointed "Wilson and Associates, PLLC, of Rutherford County, TN" as Trustee (Docket No. 1-4 at 1.) Because Wilson is not resident in Rutherford County—its principal place of business is Little Rock, Arkansas and it has an office in Williamson County, Tennessee[3] —the substitution of trustee is void, the Amodios contend, due to defective notice. Put another way, preparation of the Substitution of Trustee document renders Wilson liable "because it appoints a fictitious company without a location in the county identified in the recorded document." (Docket No. 11 at 5–6.) Wilson moves to dismiss on the grounds that the incorrect county identification in the Substitution of Trustee document is not a material error and does not impact the validity of the foreclosure.

Under Tennessee law, it is clear that "[w]rongful foreclosure can be asserted . . . as a primary cause of action when a mortgagor asserts that a foreclosure action is improper under a deed of trust." *Garner v. Coffee Cty. Bank*, No. M2014-01956-COA-R3-CV, 2015 WL 6445601, at *10 (Tenn. Ct. App. Oct. 23, 2015) (citing *Overholt v. Merchants & Planters Bank*, 637 S.W.2d 463, 463–67 (Tenn. Ct. App. 1982)). There are no specific elements for a wrongful foreclosure

---

[3] Multiple docket entries indicate that Wilson & Associates, PLLC has an office at 5300 Maryland Way in Brentwood, Tennessee. (*See* Docket No. 15 at 1; Docket No. 20 at 1.)

claim under Tennessee law. *Ogle v. U.S. Bank Nat'l Ass'n for Residential Asset Sec. Corp.*, No. 1:17-CV-40-TAV-CHS, 2018 WL 1324137, at *3 (E.D. Tenn. Mar. 14, 2018). As many federal district courts in this state have noted, however, "Tennessee courts generally examine whether contractual or statutory requirements were met in the foreclosure of the property in question." *Ringold v. Bank of Am. Home Loans*, No. 2:12–cv–02344, 2013 WL 1450929, at *6 (W.D. Tenn. Apr. 9, 2013).

Tennessee courts have historically required "strict compliance with the advertisement and notice terms as provided in the deed of trust." *Fed. Nat'l Mortg. Ass'n v. Robilio*, No. W2007-01758-COA-R3-CV, 2008 WL 2502114, at *7 (Tenn. Ct. App. June 24, 2008) (citing *Henderson v. Galloway*, 27 Tenn. 692, 695–96 (Tenn. 1848)). A trustee's failure to comply with the clear terms of the deed of trust pertaining to foreclosure will render a subsequent conveyance invalid. *Id.* (citing *Progressive Bldg. & Loan Ass'n v. McIntyre*, 89 S.W.2d 336, 336 (Tenn. 1936)). Failure to comply with statutory provisions, however, does not provide a basis for setting aside a foreclosure sale. Tenn. Code Ann. § 35-5-106; *see also EverBank v. Henson*, No. W2013-02489-COA-R3CV, 2015 WL 129081, at *1 (Tenn. Ct. App. Jan. 9, 2015) ("[T]he mere failure of a trustee to comply with the provisions of Tenn. Code Ann. § 35-5-101 *et seq.* is insufficient to set aside a foreclosure sale."), *perm. to appeal denied* (Tenn. Dec. 15, 2015). Notwithstanding, the law also provides that violation of statutory notice provisions may give rise to a viable claim for damages. *See* Tenn. Code Ann. § 35-5-107 (providing that any person who fails to comply with the notice and other provisions of the foreclosure law is "liable to the party injured by the noncompliance, for all damages resulting from the failure"); *see also EverBank*, 2015 WL 129081, at *1 (affirming dismissal of action to set aside foreclosure sale but reinstating damages claim based on the defendant's failure to provide notice to interested party of record).

The Amodios allege that the misidentification of Wilson as a Rutherford County entity violates notice provisions of two Tennessee statutes: Tenn. Code Ann. Sections 66-24-123(c) and 35-5-101 *et seq.* Section 35-5-101 *et seq.* governs judicial foreclosure sales. The Amodios allege that Wilson violated Sections 35-5-101 and -104 by failing to properly identify an interested party. Section 35-5-101 requires notice be provided in accordance with Section 35-5-104 prior to any judicial foreclosure sale. Section 35-5-104 states that "[t]he advertisement or notice shall: (1) Give the names of the plaintiff and defendant, or parties interested." Tenn. Code Ann. § 35-5-104(a)(1). The Amodios contend that the Substitution of Trustee document fails the requirements of Sections 35-5-101 and -104(a)(1) because it does not give the correct name of the interested party. Put another way, the Amodios' argument is that "Wilson and Associates, PLLC, of Rutherford County, Tennessee" is a fictional entity and thus cannot be an interested party.

However, Sections 35-5-101 and -104 govern notice or advertisement of foreclosure. The first publication of notice of foreclosure included Wilson's correct name and identified it as the substitute trustee. (*See* Docket No. 1-8 at 1 ("NOW, THEREFORE, notice is hereby given that the entire indebtedness has been declared due and payable; and that an agent of Wilson & Associates, P.L.L.C., as Successor Trustee . . . will offer for sale certain property. . . . ").) The publication did not misidentify Wilson. The publication of foreclosure thus satisfied the notice requirements of Sections 35-5-101 and 35-5-104. The mistaken county identification in the Substitution of Trustee document is irrelevant with regard to that statute. Because the Amodios received sufficient notice that Wilson was foreclosing on their property, they cannot state a claim for wrongful foreclosure based on Section 35-5-101 *et seq.*

Nor can the Amodios sustain their claim based on an alleged violation of Section 66-24-123. Section 66-24-123 sets forth residence requirements for security trusts. Tenn. Code Ann. § 66-24-123. Section 66-24-123 states in relevant part:

> (c)(1) The county, city or town in this state in which such trustee resides shall be sufficient statement of the residence address of such trustee.

Tenn. Code Ann. § 66-24-123. The Amodios argue that the Substitution of Trustee document violates Section 66-24-123(c)(1) because it does not include a sufficient statement of residence. However, the top of the document lists Wilson's full address:

> This Instrument Prepared by:
> *WILSON & ASSOCIATES, P.L.L.C.*
> 400 West Capitol Avenue
> Suite 1400
> Little Rock, AR 72201
> (501)-219-9388

(Docket No. 1-4 at 1.) Wilson thus need not avail itself of Section 66-24-123(c)(1), which essentially provides a shortcut that allows resident entities to list only the county, town, or city of residence rather than their full address. The Substitution of Trustee document provides its full address.

The Amodios cite no cases in which misidentification of a party's county of residence in a recorded substitution of trustee document constitutes a violation of Section 66-24-123(c). And they cite no cases in which violation of Section 66-24-123 has sustained a wrongful foreclosure claim. Moreover, Wilson's correct address is listed on the Substitution of Trustee document. Based on these considerations, the court finds that the Amodios fail to state a claim against Wilson for wrongful foreclosure.

**II.  FDCPA violations**

The Amodios next allege violations of the FDCPA. The FDCPA was enacted to eliminate abusive, deceptive, and unfair debt collection practices by debt collectors, to insure those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent state action to protect consumers. 15 U.S.C. § 1692(e). To those ends, the FDCPA regulates interactions between consumer debtors and "debt collector[s]," defined to include any person who "regularly collects . . . debts owed or due or asserted to be owed or due another." *Id*. §§ 1692a(5)-(6). For instance, the FDCPA prohibits debt collectors from making false representations as to a debt's character, amount, or legal status; communicating with consumers at an "unusual time or place" likely to be inconvenient to the consumer; or using obscene or profane language or violence or the threat thereof. See 15 U.S.C. §§ 1692e(2), 1692c(a)(1), 1692d(1)-(2). Courts use the "least sophisticated consumer" standard when assessing whether particular conduct violates the FDCPA. *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 329 (6th Cir. 2006). The test is objective and is designed to "ensure that the FDCPA protects all consumers, the gullible as well as the shrewd." *Kistner v. Law Offices of Michael P. Margelefsky, LLC*, 518 F.3d 433, 438 (6th Cir. 2008) (internal citations omitted).

Relevant here is section 1692e of the FDCPA, which forbids debt collectors from conduct that consists of false or misleading representations. The Sixth Circuit has instructed that, to establish a claim under Section 1692e, a plaintiff must demonstrate that (1) she is a "consumer" as defined by the Act; (2) the debt arose out of transactions that are primarily for personal, family, or household purposes; (3) the defendant is a debt collector, as defined by the Act, and (4) the defendant violated prohibitions set forth by section 1692e. *Wallace v. Wash. Mut. Bank, F.A.*, 683 F.3d 323, 326 (6th Cir. 2012).

The Amodios allege in their Complaint that Wilson violated two provisions of Section 1692e. The first, Section 1692e(2), proscribes the false representation of "the character, amount, or legal status of any debt." The second, Section 1692e(10), forbids the "use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." In response, Wilson argues only that "there is no identification of the allegedly false and/or misleading representations in the pleading that implicates Wilson, and no specification of who made such representations." (Docket No. 7 at 4.) However, the Amodios state in their Complaint that Wilson violated Section 1692e "by making false and/or misleading representations to [the Amodios] regarding the status of their loan account," which the Complaint specifies as including "the amount due on their mortgage loan." (Docket No. 1 at 9–10.) In its July 26, 2017 letter, Wilson informed the Amodios that they owed $15,395.26 on their loan. (Docket No. 1-2 at 1.) The Amodios disputed that amount and now contend that Wilson misled them as to the amount owed on their loan. As noted above, the FDCPA is a strict liability statute that expressly forbids "[t]he false representation of . . . the character, amount, or legal status of any debt." 15 U.S.C. § 1692e(2)(A). The Amodios' allegation thus satisfies the requirement that plaintiffs plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678–79. Wilson makes no other argument for dismissal of this count. The Amodios' claim for violations of the FDCPA will therefore not be dismissed.

**III.    Abuse of Process**

Finally, the Amodios allege that Wilson's actions in pursuing foreclosure constitute an abuse of process. "'Abuse of process' occurs when a person uses a legal process, whether criminal or civil, against another primarily to accomplish a purpose for which it is not designed." 1 Am.

Jur. 2d Abuse of Process § 1. In order to recover for an abuse of process, a claimant must establish the following two elements: "(1) the existence of an ulterior motive; and (2) an act in the use of process other than such as would be proper in the regular prosecution of the charge." *Id*. at 400–01 (internal quotation marks omitted). Abuse of process "only deals with perversions of the tools of litigation occurring after a lawsuit has commenced." *Montpelier v. Moncier*, No. E2016-00246-COA-R3-CV, 2017 WL 2378301, at *5 (Tenn. Ct. App. June 1, 2017) (citation omitted), *appeal denied* (Dec. 13, 2017). Thus, a claim for abuse of process "normally rests on some writ, order, or command of the court in the course of a judicial proceeding. Such a claim . . . refers to times when the authority of the court is used for some improper purpose." *Blalock v. Preston Law Grp., P.C.*, No. M2011-00351-COA-R3CV, 2012 WL 4503187, at *4 (Tenn. Ct. App. Sept. 28, 2012) (internal citations and quotation marks omitted). Thus, "[t]he gist of the tort of abuse of process is the misuse of the court's power." *Id*. "Because of its potential chilling effect on the right of access to the courts, the tort of abuse of process is disfavored and must be narrowly or strictly construed to insure the individual a fair opportunity to present the claim." 1 Am. Jur. 2d Abuse of Process § 1.

The Amodios contend that Wilson conducted an invalid foreclosure, resulting in surplus funds that are owed to the Amodios but that Wilson has not returned, despite repeated requests. The Amodios explain that the surplus funds should have gone to them immediately following the recording of the deed from the foreclosure sale. Instead, Wilson has retained the funds for over ten months and, the Amodios argue, have benefited from the use or interest gained from the funds over that period. Thus, Wilson allegedly had an ulterior motive in keeping the Amodios' funds when it instituted foreclosure proceedings and allegedly performed an improper act in converting and possessing the Amodios' funds. Wilson makes two arguments in response. First, it claims

11

that there can be no abuse of process absent a judicial proceeding.  Second, it states that it is only a stakeholder and has held the excess funds due to the bankruptcy proceeding and related allegations subject to litigation.  Thus, Wilson argues, it had no ulterior motive because there has been, and is, no benefit to Wilson in holding the funds in question.

The court need not reach the second argument because Wilson prevails on the first.  The Amodios argue that Wilson is liable for abuse of process, despite conducting a non-judicial foreclosure, because the foreclosure is governed by the Tennessee Code.  But the Amodios cite no legal support for this proposition.  Tennessee courts have made clear that the tort of abuse of process is grounded in misuse of judicial power.  *See Blalock*, 2012 WL 4503187, at *4; *Montpelier*, 2017 WL 2378301, at *5.  The court is unaware of any cases where a nonjudicial foreclosure has sustained an abuse of process claim; to the contrary, many courts have explicitly disallowed such claims.  *See Boone v. Deutsche Bank Nat'l Tr. Co.*, No. 216-CV-1293-GEB-KJN PS, 2017 WL 117966, at *4 (E.D. Cal. Jan. 12, 2017) ("[T]he allegations of the complaint indicate that defendant Deutsche Bank attempted to foreclose on plaintiffs' property via California's non-judicial foreclosure process, which cannot give rise to a claim for abuse of process as a matter of law."); *Soto v. OneWest Bank, FSB*, No. 2:14-CV-1563-GMN-VCF, 2015 WL 1535807, at *2 (D. Nev. Apr. 6, 2015) ("[N]umerous courts in this district have held that a non-judicial foreclosure sale cannot give rise to an abuse of process claim."); *Me Lee v. LNV Corp.*, No. 2:11-CV-8204-ODW, 2012 WL 1203403, at *4 (C.D. Cal. Apr. 10, 2012) ("[N]on-judicial foreclosures cannot form the basis of an abuse of process claim."); *Schwartz v. World Sav. Bank*, No. C11-0631JLR, 2012 WL 993295, at *5 (W.D. Wash. Mar. 23, 2012) ("[A]lthough Washington has not yet ruled on the issue, other courts have denied claims for malicious prosecution or abuse of process based on a non judicial foreclosure proceeding because a non judicial foreclosure does not constitute the

type of legal action contemplated by such claims. Accordingly . . . the court grants the Bank's motion for summary judgment with regard to Plaintiffs' claims for abuse of process and malicious prosecution.") (internal citations omitted); *Tom v. GMAC Mortg., LLC*, No. CIV. 10-00653 SOM, 2011 WL 2133705, at *10 (D. Haw. May 25, 2011) ("The nonjudicial foreclosure process does not involve 'legal process' because it occurs outside of the 'range of procedures incident to litigation,' and instead involves actions unrelated to court authority. Plaintiffs therefore do not allege a viable abuse of process claim arising out of the initiation of nonjudicial foreclosure proceedings.") (internal citations omitted); *Fromkin v. Indymac Bank FSB*, No. 10-CV-8014-PCT-PGR, 2010 WL 2541167, at *8 (D. Ariz. June 18, 2010) ("A trustee's sale is not the type of 'process' which may support an abuse of process claim. Rather, Arizona courts have held that the type of 'process' required to state an abuse of process claim, is the improper use of 'judicial process,' in litigation procedures including 'the noticing of depositions, the entry of defaults, and the utilization of various motions such as motions to compel production, for protective order, for change of judge, for sanctions and for continuances.'") (internal citations omitted); *see also Murphy v. Allstate Corp.*, No. 1:09CV00915, 2011 WL 4499104, at *6 (M.D.N.C. Sept. 27, 2011), *report and recommendation adopted*, No. 1:09 CV 915, 2011 WL 5864308 (M.D.N.C. Nov. 22, 2011) (citing favorably cases holding that nonjudicial foreclosure cannot sustain abuse of process claim).

The court does not find that the facts as alleged demonstrate a perversion of the tools of litigation. The Amodios therefore cannot sustain a claim for abuse of process.

## **CONCLUSION**

For the foregoing reasons, Wilson's Motion to Dismiss (Docket No. 7) is hereby **GRANTED in part**. The Amodios' claims against Wilson for wrongful foreclosure and abuse of process are hereby **DISMISSED**.

It is so **ORDERED**.

ENTER this 21st day of December 2018.

_____
ALETA A. TRAUGER
United States District Judge