UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| FRANK EMIL AMODIO JR. and<br>ARYANA OLSON AMODIO,<br><br>    Plaintiffs,<br><br>v.<br><br>OCWEN LOAN SERVICING, LLC,<br>WILSON & ASSOCIATES, PLLC,<br><br>    Defendants. | Case No. 3:18-cv-00811<br>Judge Aleta A. Trauger |

# MEMORANDUM & ORDER

Wilson & Associates, PLLC ("Wilson") has filed a Motion for Summary Judgment (Docket No. 30), to which the plaintiffs, Frank Emil Amodio Jr. and Aryana Olson Amodio, have filed a Response (Docket No. 35), and Wilson has filed a Reply (Docket No. 38). For the reasons discussed herein, Wilson's motion will be denied.

# FACTUAL BACKGROUND[1]

The Amodios are residents of Rutherford County. Wilson is an entity that conducts foreclosure-related activities in Tennessee. Wilson's co-defendant, Ocwen Loan Servicing, LLC ("OLS"), is a mortgage services company. (Docket No. 1 ¶¶ 6–8.) In May 2005, Ayrana Amodio took out a second home mortgage and executed a Deed of Trust that was recorded in the Rutherford County, Tennessee Register's Office. (Docket No. 1-9.) OLS serviced the mortgage. (Docket No. 1 ¶ 14.)

---

[1] Wilson has conceded, for the purposes of its Motion for Summary Judgment, that all of the Amodios' factual allegations are true. (Docket No. 31 at 1.) These facts, therefore, are mostly taken from the Complaint. (Docket No. 1.)

1

The Amodios eventually fell behind on the mortgage. On July 26, 2017, they received a letter from Wilson, stating that they were in default and that their loan was being accelerated, with a total debt of $15,395.26 now being due and owing. (*Id.* ¶ 13.) The Amodios disputed this debt to Wilson and contacted OLS to "obtain the reinstatement amount required to reinstate their second mortgage." (*Id.* ¶ 14.) OLS initially informed Ms. Amodio that she should send $1,543.00 to OLS in order to have the loan reinstated. After the Amodios did so, however, they called OLS to confirm receipt and were informed that an additional $792.24 was due. (*Id.* ¶¶ 15–16.)

On August 4, 2017, a Substitution of Trustee document was recorded in the Rutherford County, Tennessee Register's Office, designating Wilson as the entity empowered to enforce the Deed of Trust. (Docket No. 1-4.) The Substitution of Trustee document stated that the Deed of Trust's beneficiary had requested that foreclosure proceedings be instituted. *See* Tenn. Code Ann. § 47-9-607(b) (permitting nonjudicial foreclosure under Tennessee law). On August 30, 2017, individuals identified as Scott Young and Frank Russell purchased the property at a foreclosure sale for the purchase price of $58,000.00. (Docket No. 1 ¶ 18; Docket No. 1-5.).

On August 28, 2018, the Amodios filed suit against OLS and Wilson, bringing three types of claim against Wilson: wrongful foreclosure, violations of the Fair Debt Collection Practices Act, 15 U.S.C. 1692 *et seq.* ("FDCPA"), and abuse of process. (Docket No. 1 ¶¶ 34–39; 57–73.) On October 8, 2018, Wilson moved to dismiss the claims against it. (Docket No. 7.) On December 21, 2018, the court granted the motion with regard to wrongful foreclosure and abuse of process but held that the Amodios had pleaded actionable violations of the FDCPA. (Docket No. 22 at 10.)

On March 20, 2019, the Supreme Court issued an opinion in *Obduskey v. McCarthy & Holthus LLP*, holding that entities that "engage in only nonjudicial foreclosure proceedings are not debt collectors within the meaning of the" FDCPA other than with regard to one provision, 15

U.S.C. § 1692f(6). 139 S. Ct. 1029, 1038 (2019). On April 25, 2019, Wilson filed a Motion for Summary Judgment, arguing that the Amodios' FDCPA claim—the only claim still pending against Wilson—was barred by *Obduskey*. (Docket No. 30.) In its Memorandum in support of its Motion, Wilson wrote that, for the purposes of the Motion, Wilson accepts the facts in the Amodios' Complaint as true. (Docket No. 31 at 1.) As required by Local Rule 56.01(b), Wilson filed a Statement of Undisputed Facts in support of its motion. (Docket No. 32.) The Amodios filed a Response to the Motion (Docket No. 35) and a Memorandum in support of that Response (Docket No. 36), but, contrary to Local Rule 56.01(c), did not file a separate response to Wilson's Statement of Undisputed Facts. *See* Local R. 56.01(c). Wilson filed a Reply. (Docket No. 38.)

## **LEGAL STANDARD**

Rule 56 requires the court to grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If a moving defendant shows that there is no genuine issue of material fact as to at least one essential element of the plaintiff's claim, the burden shifts to the plaintiff to provide evidence beyond the pleadings, "set[ting] forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "In evaluating the evidence, the court must draw all inferences in the light most favorable to the non-moving party." *Moldowan*, 578 F.3d at 374 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

At this stage, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). But "[t]he mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient," and the party's proof must be

more than "merely colorable." *Anderson*, 477 U.S. at 249, 252. An issue of fact is "genuine" only if a reasonable jury could find for the non-moving party. *Moldowan*, 578 F.3d at 374 (citing *Anderson*, 477 U.S. at 252).

## ANALYSIS

Under Local Rule 56.01(f), if a non-moving party fails to respond to the moving party's statement of undisputed material facts, "the asserted facts shall be deemed undisputed for purposes of summary judgment." Although the Amodios should have filed a Response, it appears, from the parties' briefing, that the dispute between them is entirely legal, regarding whether *Obduskey* applies to all of the Amodios' allegations in this case.

The FDCPA regulates interactions between consumer debtors and "debt collector[s]," defined to include any person "in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. §§ 1692a(6). The definition of "debt collector," however, includes an additional provision that does not, by its own terms apply throughout the FDCPA. Under that provision, which applies "[f]or the purpose of section 1692f(6) of" the FDCPA, the definition of "debt collector" "includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests." *Id.* In *Obduskey*, the Supreme Court construed the special provision involving § 1692f(6) to limit, by implication, the definition of "debt collectors" with regard to provisions other than § 1692f(6). Accordingly, if a person is a debt collector for the purposes of § 1692f(6) solely due to his use of an instrumentality of commerce to enforce a security interest, then he will *not* be a debt collector for the purposes of any of the Act's other provisions. 139 S. Ct. at 1033.

The Amodios do not dispute that Wilson is the type of entity covered by *Obduskey*—that is, an entity "engaged in no more than the kind of security-interest enforcement at issue" in that case, namely, nonjudicial foreclosure. *Id.* Rather, the Amodios argue that at least some of their claims against Wilson should survive because their allegations involve violations of § 1692f(6). Section 1692f(6) forbids a debt collector, as defined for purposes of that subsection, from

> [t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property if—
>
> (A) there is no present right to possession of the property claimed as collateral through an enforceable security interest;
>
> (B) there is no present intention to take possession of the property; or
>
> (C) the property is exempt by law from such dispossession or disablement.

15 U.S.C. § 1692f(6). In other words, § 1692f(6) forbids unauthorized nonjudicial repossession of secured property—such as through nonjudicial foreclosure of real property or seizure of a vehicle by an auto repossession company—as well as specious threats of repossession that a person has no intention to perform.

The Complaint filed by the Amodios does not specifically cite § 1692f(6), although it does state that Wilson's "actions constitute[d] unfair and unconscionable means to collect debts in violation of 15 U.S.C. § 1692f generally." (Docket No. 1 ¶ 65.) With regard to more specific violations, however, the Complaint relies on 15 U.S.C. §§ 1692e(2), 1692e(10), and 1692f(1), governing, respectively, making a false representation of debt, use of false representations or deceptive means in collection, and collection of an amount not authorized by the debt agreement or permitted by law. The court is not inclined, however, to treat the failure to specifically cite § 1692f(6) as necessarily fatal, in and of itself. The various subsections of the FDCPA appear capable of significant overlap, and the Amodios did, at the very least, cite § 1692f generally.

Although a plaintiff is always better served by citing law with clarity and specificity, "a finding that plaintiff's allegations state a claim under § 1692f(6), even if that section is not specifically identified in the complaint[,] is not precluded in" the Sixth Circuit. *Alexander v. Blackhawk Recovery & Investigation, L.L.C.*, 731 F. Supp. 2d 674, 680 (E.D. Mich. 2010) (discussing *Montgomery v. Huntington Bank*, 346 F.3d 693, 698 (6th Cir. 2003)). The court, accordingly, will look to the specific facts of the Complaint to determine whether they would support a claim under § 1692f(6).

In their briefing, the Amodios argue that Wilson lacked a present right of possession of their property because, "[w]hen Wilson conducted that nonjudicial foreclosure, Wilson knew that the [Amodios] disputed the de[b]t and understood that they had paid the reinstatement amount." (Docket No. 36 at 3.) Although the Complaint is not perfectly clear in alleging that the amount that the Amodios paid was actually the correct reinstatement amount—as opposed to merely what they were told was the reinstatement amount—it does at least allege that they paid the amount they were originally told to pay by OLS in order to obtain reinstatement. (Docket No. 1 ¶¶ 14–16.) Given Wilson's choice—unusual at summary judgment—to concede all of the Amodios' allegations, the court will construe the Complaint as alleging that the Amodios, at the very least, paid an amount that was arguably adequate to have their loan reinstated. In any event, Wilson, in its Reply, does not appear to dispute, for the purposes of its Motion, that the Amodios satisfied the reinstatement provision of their mortgage. Rather, Wilson argues that "[t]here is no way to read *Obduskey* [as] consistent with th[e] assertion" that "conducting a nonjudicial foreclosure on a reinstated loan that is not in default may still violate the FDCPA." (Docket No. 38 at 2.)

If the Amodios had alleged only that they disputed the debt—and not also that they had paid their reinstatement sum—then Wilson would be correct that their claim runs directly afoul of

6

*Obduskey*. The plaintiff in *Obduskey*, like the Amodios, had disputed his debt, and he alleged that the defendant had wrongfully gone forward with a nonjudicial foreclosure, despite his having done so. *See Obduskey*, 139 S. Ct. at 1035. Continuing the foreclosure in that situation would have been a violation of 15 U.S.C. § 1692g(b)—which requires a debt collector to cease collection activities, after a notice that debt is disputed, until it performs certain actions—if that provision had applied to the defendant. The definition of "debt collector" that reached the defendant, however, applied only for claims arising under § 1692f(6), leading the Supreme Court to conclude that the plaintiff could not set forth a § 1692g(b) claim. *Obduskey*, 139 S. Ct. at 1038. Any argument by the Amodios that their having disputed the debt is alone enough to set forth a § 1692f(6) claim is, therefore, foreclosed by *Obduskey*.

*Obduskey*, however, did not address foreclosure on a reinstated mortgage. The court, therefore, must look to the Amodios' reinstatement rights to consider whether they might provide the basis for a § 1692f(6) claim. The Deed of Trust between the Amodios and their lender includes a reinstatement provision granting the borrower "the right to have any proceedings begun by Lender to enforce this Deed of Trust discontinued," "[n]otwithstanding [the] Lender's acceleration of the sums secured," if the borrower meets certain requirements including curing the borrower's breach and payment of expenses. (Docket No. 1-9 at 3–4.) "Upon such payment and cure by Borrower, th[e] Deed of Trust and the obligations secured [t]hereby [are to] remain in full force and effect *as if no acceleration had occurred*." (*Id.* at 4 (emphasis added).)

A covered entity can violate § 1692f(6) by "taking . . . any nonjudicial action to effect dispossession . . . of property" when it has "no *present right to possession* of the property . . . through an enforceable security interest." 15 U.S.C. § 1692f(6)(a) (emphasis added). In other words, a party such as Wilson must have, not merely a security interest, but a presently operative

right of possession in order for its nonjudicial foreclosure to avoid violating § 1692f(6). *See Westbrook v. NASA Fed. Credit Union*, No. 3:17-CV-00534-AKK, 2019 WL 1056356, at *3 (N.D. Ala. Mar. 6, 2019) (observing that an entity seeking to enforce a security interest in a property may become liable under § 1692f(6) if it "los[es] its present right to possession" but takes possession anyway); *Wright v. Santander Consumer USA, Inc.*, No. 6:18-cv-263-Orl-22KRS, 2018 WL 2095171, at *4 (M.D. Fla. May 1, 2018) (holding that plaintiff had stated a claim against auto repossessor because he had alleged that his lender "lacked a present interest to possess the" car). Under Tennessee law, "a secured party may take possession of the collateral and may sell or otherwise dispose of it," but, at least generally, only "[a]fter default." *Brunswick Acceptance Co., LLC v. MEJ, LLC*, 292 S.W.3d 638, 642 (Tenn. Ct. App. 2008) (quoting *Auto Credit of Nashville v. Wimmer*, 231 S.W.3d 896, 899–900 (Tenn. 2007)). Wilson, however, concedes, for the purposes of its argument, that the Amodios' loan was "reinstated" and "not in default." Wilson has identified no basis for its having an ongoing right of possession in such a scenario. *Cf. Fenello v. Bank of Am., NA*, 577 F. App'x 899, 903 (11th Cir. 2014) (holding that a loan servicer has a present right of possession sufficient to defeat a § 1692f(6) claim "in the event that the [borrowers] default[] on their loan").

It may be that the Amodios failed to meet the actual requirements of reinstatement under their Deed of Trust. As the moving party, however, Wilson has not met its burden of identifying facts or law to that effect. Instead, Wilson has elected to rest almost entirely on the pleadings and the fact that the Amodios did not cite § 1692f(6) specifically. Citing § 1692f generally, however, and raising the issue of the reinstatement were enough to set forth a claim that fits under § 1692f(6)(a). Wilson, therefore, is not entitled to summary judgment based on *Obduskey*.

8

## **CONCLUSION**

For the foregoing reasons, Wilson's Motion for Summary Judgment (Docket No. 30) is hereby **DENIED**.

It is so **ORDERED**.

ENTER this 17th day of May 2019.

ALETA A. TRAUGER
United States District Judge